IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD EDWARD WEBER, | ) ) ) | |
| Plaintiff | ) ) | Case No. 1:19-00124 (Erie) |
| v. | ) ) ) | |
| ERIE COUNTY, et al., | ) ) | RICHARD A. LANZILLO<br>UNITED STATES MAGISTRATE JUDGE |
| Defendants | ) ) ) ) | OPINION AND ORDER ON<br>MOTION TO DISMISS<br>[ECF NO. 35] |

MEMORANDUM OPINION AND ORDER

Plaintiff Richard Edward Weber commenced this civil rights action pursuant to 42 U.S.C. § 1983. His original Complaint alleged that Defendants, Erie County, Pennsylvania, and various Erie County officials, violated his constitutional rights during his state court criminal prosecution. ECF No. 1. All Defendants moved to dismiss Weber's Complaint pursuant to Fed. R. Civ. Pro 12(b)(6). ECF No. 10. The Court granted Defendants' motion and dismissed Weber's claims against all Defendants with prejudice except the claims against Defendants Erie County and Kathy Dahlkemper, its County Executive. ECF Nos. 26, 33. Weber's claims against these two Defendants were dismissed without prejudice and with leave to file an amended complaint.

Weber filed his Amended Complaint on April 10, 2020. ECF No. 34. Defendants Erie County and Dahlkemper have again moved to dismiss Weber's claims against them pursuant to Rule 12(b)(6). ECF No. 35. Because the allegations of Weber's Amended Complaint remain insufficient to state a claim against Erie County and Dahlkemper, the

1

Court will grant their motion and dismiss this action with prejudice.[1]

I.  Factual Background

The following factual averments are derived from Weber's Amended Complaint and the exhibits thereto and are accepted as true for purposes of the pending motion to dismiss. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). Weber was arrested on May 24, 2018, and charged with three counts of access device fraud, three counts of identity theft, and three counts of theft by deception. ECF No. 34, ¶7. Magisterial District Judge Paul Bizzarro subsequently released Weber on a $25,000 unsecured bond. *Id.* On August 22, 2018, Magisterial District Judge Frank Abate conducted a preliminary hearing on the charges against Weber. *Id.*, ¶8. During that hearing, Erie County Assistant District Attorney Jeremy Lightner (ADA Lightner) successfully advocated that the court modify Weber's bond from a $25,000 unsecured bond to a 10% of $25,000 secured cash bond. *Id.*, ¶¶8-9. On September 18, 2018, Assistant District Attorney Michael Burns (ADA Burns) successfully petitioned for the court to increase Weber's bond to $50,000, with 10% cash security, which Plaintiff posted.[2] *Id.*, ¶8.

On September 26, 2018, ADA Lightner sought and obtained a further modification of Weber's bond. *Id.*, ¶12. This time, Judge John A. Bozza of the Erie County Court of Common Pleas increased Weber's bond to $250,000 "straight cash," which Weber was unable to post. *Id.*, ¶12. Consequently, Weber was detained in custody. *Id.*, ¶13.

---

[1] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636. *See* ECF Nos. 13, 16.

[2] As Exhibit D to his original Complaint, Weber attached the Commonwealth's Motion to Revoke Bond, which ADA Burns filed on September 18, 2018. ECF Nos. 1–3, pp. 1–9. That document includes a Police Criminal Complaint filed on September 13, 2018, charging Weber with three additional counts of access device fraud, two additional counts of theft by deception, and one new count of attempted theft by deception. *Id.* pp. 4–6.

On October 29, 2018, Weber moved *pro se* to modify his bond, and the motion was heard by Common Pleas Court Judge Daniel J. Brabender on November 19, 2018. *Id.*, ¶¶14-15. Assistant District Attorney Nicholas Maskrey (ADA Maskrey) initially opposed Weber's motion but ultimately stipulated to Judge Brabender's reduction of Weber's bond to $17,500 with 10% cash security, which Weber posted to secure his pretrial release. *Id.*, ¶15. Weber claims that he was unlawfully held in custody for approximately two and one-half months and that this unlawful incarceration caused him to suffer a variety of damages, including the loss of his employment and residence and the demise of his marriage. *Id.*, ¶16.

In its prior Opinion and Order, the Court held that Weber's original Complaint failed to state a claim against Dahlkemper because it did not allege facts to support her personal involvement in any actionable conduct and also failed to state a claim against Erie County because it did not allege facts to support a policy or custom that resulted in constitutional harm to Weber.[3] In an effort to cure these deficiencies, Weber's Amended Complaint added the following allegations:

> It is upon information and belief that the Defendants County of Erie, and it's (sic) [C]ounty [E]xecutive, Dahlkemper, have informally adopted and continues (sic) to maintain, an unconstitutional custom, arising from the elicit practices from their subordinate official and/or employees in the area of "excessively" setting and/or modifying the bails/bonds of suspected individual whom they come in contact with that is so obviously permanent and well settled throughout the city of Erie at Erie County as to constitute an unofficially approved with the force of law amounting to the continued entrenched misbehaviors of "deliberately indifference" to the state and federal constitutionally protected rights of the plaintiff and the citizens of the city of Erie at Erie County as to constitute an unofficially approved policy with the force of law amounting to the continued entrenched misbehaviors of "deliberate indifference" to the state and federal

---

[3] This Court dismissed Weber's claims against District Attorney Jack Daneri and the three assistant district attorney defendants who participated in Weber's bond proceedings based upon prosecutorial immunity. *See* ECF No. 26.

3

> constitutionally protected rights of the plaintiff and the citizens of the city of Erie at Erie county, that defendants are depriving plaintiff of evinced through the clear and widespread patters(s) of their subordinate officials and/or employees that are more than likely to result in reoccurrence upon those named herein. Plaintiff proffers the following indicia in support, see Pa. Criminal Doc. No.(s) Victor K. Lemmons at 1585-2018, 1586-2018; Jasmine N. Carter at 1573-2018 (The receiving of bail/bond revocation(s)/modifications in stark contrast to the laws of Pennsylvania.)

ECF No. 34, ¶17.

Weber asserts his claim against Erie County pursuant to *Monell v. Dep't of Soc. Servs. of the City of New York,* 436 U.S. 658 (1978). He bases his claim against Erie County and Dahlkemper on an alleged "failure to properly train, supervise, monitor, and/or create an adequate program, schedule, and/or scheme that guides and/or closely monitors their subordinate officials and/or employees (sic) conduct in the setting and/or modifying of individual suspects in criminal cases to ensure compliance with local, state, and federal laws resulting in plaintiff receiving an 'excessive' bail/bond in violation of Article 1 §13 of the Pennsylvania constitution (sic) and the Eighth and Fourteenth Amendments to the United States constitution (sic)." *Id.,* ¶19.

This matter is fully briefed and ripe for disposition.

II.     Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)

(citing 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). A complaint should only be dismissed pursuant to Rule 12 (b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41 (1957)). In making this determination, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). While a complaint does not need detailed factual allegations to survive a motion to dismiss, a complaint must provide more than labels and conclusions. *Twombly*, 550 U.S. at 555. A "formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, a court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. *See California Pub. Employee Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). Nor must the Court accept legal conclusions disguised as factual allegations. *Twombly*, 550 U.S. at 555. *See also McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

At the same time, *pro se* pleadings, such as Weber's, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United*

5

*States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); *Smith v. US. District Court*, 956 F.2d 295 (D.C. Cir. 1992); *Freeman v. Dep't of Corrections,* 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed. R. Civ. P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.*, 906 F.2d 100, 103 (3d Cir. 1990) (same).

### III. Analysis

#### A. The Amended Complaint fails to state a claim against County Executive Dahlkemper.

The Court previously dismissed Weber's claim against Erie County Executive Dahlkemper because his original Complaint did not allege enough facts to support that she engaged in any actionable conduct or was personally involved in any matters or decisions relating to the criminal prosecution against him. Weber's Amended Complaint does nothing to correct this deficiency. The only additional allegations against her are pure conclusions of law tracking the legal standard created in *Monell* that are not supported by facts alleged elsewhere in the pleading. Thus, his claim against Dahlkemper remains solely based upon her position as County Executive. Weber's reliance on Dahlkemper's position without allegations of her personal involvement is insufficient as a matter of law. *See Monell,* 436 U.S. at 691 (holding that no vicarious liability exists for a municipal "person" under 42 U.S.C. § 1983); *Mearin v. Swartz,* 951 F.Supp.2d 776, 781-82 (W.D. Pa. 2013) (dismissing claims pursuant to Rule 12(b)(6) because the plaintiffs had failed to set forth sufficient facts to establish that certain

defendants had played an affirmative part in the alleged Eighth Amendment violation).

In purely conclusory terms, Weber's Amended Complaint asserts that Dahlkemper failed to properly train and supervise the assistant district attorneys involved in his bail proceedings. A failure to train claim requires a plaintiff to identify specific training not provided that could reasonably be expected to prevent the injury that occurred. *Joines v. Twp. of Ridley*, 229 Fed. Appx. 161 (3d Cir. 2007). Moreover, when relying on a failure to train employees, a plaintiff must show that the failure amounts to deliberate indifference to the rights of persons with whom the employees will come into contact. *City of Canton v. Harris,* 489 U.S. 378, 388, (1989). In this area, two theories of supervisory liability have been recognized: where supervisors have "'established and maintained a policy, practice or custom which directly caused [the] constitutional harm,'" and where "they 'participated in violating plaintiff's rights, directed others to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in [their] subordinates' violations'." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n. 5 (3d Cir. 2010) (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)). Weber has alleged no facts to support either of the foregoing theories of liability. Instead, he again relies on pure conclusions of law and recitations of claim elements that are entitled to no weight in deciding a motion to dismiss. *Santiago,* 629 F.3d at 131 (*Iqbal,* 129 S.Ct. at 1949, directs that the Court disregard "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.").

Moreover, supervisory liability under § 1983 may not be premised solely on allegations that the defendant official failed to act or should have done more. *Sample v. Diecks*, 885 F.2d 1099 (3d Cir.1989). Weber must identify specifically what Dahlkemper did or failed to do that

evidences her deliberate indifference. "Only in the context of a specific defalcation on the part of the supervisory official can the court assess whether the official's conduct evidenced deliberate indifference and whether there is a close causal relationship between the 'identified deficiency' and the 'ultimate injury.'" *Id.* at 1118. Weber's allegations fall woefully short of stating a plausible claim for supervisory liability against Dahlkemper. Accordingly, Weber's claim against her will be dismissed.

B.   The Amended Complaint also fails to state a *Monell* claim against Erie County.

Weber asserts a *Monell* claim against Erie County based upon the same conclusory "failure to train and supervise" allegations he lodged against Dahlkemper. These allegations also fail to support a claim against Erie County. Like its county executive, a county cannot be held liable for its employees' alleged misconduct based on a theory of *respondeat superior*. *Monell,* 436 U.S. at 694-95; *Panas v. City of Philadelphia,* 871 F. Supp. 2d 370, 377-78 (E.D. Pa. May 14, 2012). Rather, the "government itself, through its policies or practices, must be sufficiently culpable before" a court imposes § 1983 liability. *Id.* Such culpability exists only "when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *McTernan v. City of York,* 564 F.3d 636, 657 (3d Cir. 2009) (quoting *Beck v. City of Pittsburgh,* 89 F.3d 966, 971 (3d Cir. 1996)).

The Supreme Court has recognized that a local government's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson,* 563 U.S. 51, 61 (2011). Moreover, merely alleging the existence of a policy, practice, or custom is not enough. The plaintiff in a § 1983 action must show an "affirmative

8

link" between the occurrence of alleged misconduct and the municipality's policy, custom, or practice. *Rizzo v. Goode*, 423 U.S, 362, 371 (1976). Thus, consistent with *Monell,* in order to impose liability on a local governmental entity for failing to act to preserve constitutional rights, a § 1983 plaintiff must establish not only that he was deprived of a constitutional right, but that: (1) the municipality had a policy; (2) the policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (3) the policy was the "moving force behind the constitutional violation." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 389-91 (1989). Weber has not alleged facts to support any of these elements. The court has before it allegations of the imposition of excessive bail upon Weber and a threadbare reference to other instances of excessive bail against two people, writing "[p]laintiff proffers the following indicia in support, see Pa. Criminal Doc. No.(s) Victor K. Lemmons at 1585-2018, 1586-2018; Jasmine N. Carter at 1573-2018 (The receiving of bail/bond revocation(s)/modifications in stark contrast to the laws of Pennsylvania.)" ECF No. 34, ¶17. He provides no facts regarding the intent required for a showing of "deliberate indifference" to his or others constitutional rights. And he avers no facts that this policy was the "moving force behind the constitutional violation" instead of well-accepted, discretionary and statutory factors considered in the imposition of bail for criminal pretrial detention. Accordingly, his claim against Erie County also will be dismissed.

IV.   Allowing Leave to Amend Would Be Futile

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the Court should permit a curative amendment unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* litigants and those represented by counsel.

*Alston v. Parker,* 363 F.3d 229, 235 (3d Cir. 2004).

In its prior Opinion and Order, the Court explained in detail the elements Weber would need to support with factual allegations to state claims against Dahlkemper and Erie County. *See* ECF No. 26. His Amended Complaint fails to support any of these necessary elements. Having articulated the factual allegations Weber needed to adduce to support his claims and observed Weber's failure to do so, the Court finds that granting him a further opportunity to amend his pleading would be both futile and inequitable. Accordingly, the Court will dismiss Weber's claims against Dahlkemper and Erie County under federal law with prejudice.[4]

## ORDER

For the reasons stated in the foregoing Opinion, Defendants' Motion to Dismiss [ECF No. 35] is GRANTED. Plaintiff's claims against Defendants Dahlkemper and the County of Erie under federal law are dismissed with prejudice. To the extent Plaintiff's Amended Complaint asserts a claim under state law, the Court declines to exercise supplemental jurisdiction over that claim and dismisses it without prejudice. The Clerk of the Court is directed to close this case.

United States Magistrate Judge

Dated: October 8, 2020

---

[4] Weber's Amended Complaint included a reference to Article 1, §13 of the Pennsylvania Constitution. ECF No. 34, ¶19. To the extent this reference represented Weber's intent to assert a claim under the Pennsylvania Constitution, the Court declines to exercise supplemental jurisdiction over the claim in accordance with 28 U.S. Code § 1367(c)(3).